Our next case is the reverse UNM Rainforest Innovations v. ZyXEL Communications, 2023-12-96. Mr. Key, if you're ready. Good morning, Your Honors, and may it please the Court, Cecil Key on behalf of the Appellate University of New Mexico Rainforest Innovations. I'd like to focus my presentation today on the Board's erroneous constructions of the terms compression and quantization, which form the basis for both the Board's invalidation of the challenged original claims of the 204 patent and the denial of UNMRI's contingent motion to amend. Opposition is the Board fundamentally erred in failing to follow the long-established framework for claim construction that this Court set forth in Phillips. It manufactured constructions that are at odds with the specification of the 204 patent, and even worse, the Board used the specification of ZyXEL's asserted prior art, Huey, to interpret the 204 patent, and then erroneously concluded that to avoid ZyXEL's asserted prior art, an express disavowal was needed. Now, the invention at issue here, Your Honors, involves the operations of quantization and compression on what's called the channel state information, or CSI, for the purpose of improving performance of multi-channel communication systems. It was known in the art that quantization is an operation typically performed on individual pieces of data, whereby a finite number of bits are mapped to a data sample. Compression, on the other hand, is the operation where a set of data is represented using a reduced amount of bits. Now, the Board itself recognized that these differences were known in the art. It began in its opinion on APPX 30, stating that quantization... Can you say again what you think quantization means? Yes, Your Honor. Quantization is... It's an object where you're quantifying X. Can you say what X is and what the activity of quantization does to X? Yes. X is a data sample or a coefficient. Quantization then is assigning bits, ones and zeros, to be used by the digital system. So, for example, if you take a continuous analog signal, it's discretized, broken into pieces. You then must assign bit numbers to the pieces that are given to be used in the digital system. I understand that either the core or at least part of the issue here is whether you have options about how many bits to use so that, you know, quantization of X equals Y. You have different numbers of bits that are going to be in Y, and if you choose to use fewer rather than more, that that was viewed by the board as one form of compression. Yes, Your Honor. So the board... If that's right, I mean, if that's a correct description of what the board concluded, why is that wrong for either the original or the... So, first of all, Your Honor, there is a difference between compression, which is trying to take a set of data and then be able to represent it using a few number of bits, versus any other operation such as quantization that just may result in data loss. So any data reduction does not necessarily equal... I'm sorry, I thought there was lossless compression and lossy compression, but they're both compression. Yes, Your Honor, but they're both compression that are performed on sets of data. So, for example, I think a good way to visualize this, if you look at figure three of the 204 patent, it shows where there are a lot of these channel taps, and it shows a slope, all the Y intercepts in the slope from left to right. Essentially, using the least squares method, you can represent all of these various channel taps using two bits, the one on the far left and the one on the far right. So that is being able to take the set of data, assign bits to it, and a reduced number of bits. Whereas quantization, really the idea is just to assign bits to it. Now, it may, perhaps I think there was argument below about whether or not it might have incidental loss or what have you, but it can also end up in increase. It is not necessarily a compression technique, especially in the 204 patent. I thought that the board acknowledged that it wasn't necessarily a compression technique, but that sometimes it is and that's enough. Yes, Your Honor. That is exactly what they said. But our position is it is not that way in the 204 patent. If they had followed the Phillips framework, you would have been able to see that, if I may. If you look at the claims of the 204 patent, looking, for example, at APPX 1664, claim one is structured as follows, the original claims. A sample is selected, compression is performed, and then the compressed data is sent to the administration. That's claim one. In dependent claims nine and ten, quantization can be performed on specific data, the time delays and the phases. In dependent claims two and seven, quantization can also be performed on the compressed data. So, first of all, I should mention in dependent claims nine and ten, quantization is part of the sending step I mentioned, not part of the compression step. Throughout those claims, Your Honor, compression and quantization are two separate operations used in two separate ways, on their face indicating they are not overlapping at all. Now, the board relied heavily on the sites to column four of the 204 patent, and specifically on lines 11 through 19. But if you read that column starting a couple of sentences ahead, what you will see is starting around line seven, there is a selection process that's described. Starting around line nine, it describes quantizing those time delays and phases. Then the next sentence, it says compression of the magnitude and then quantizing of the compressed information. And then the final sentence says you send the quantized information to the base station. That is exactly what the structure that's used in the claims. Now, the board seemed to believe that there is a phrase in that third sentence I mentioned. It says the base station may further compress. And the board reading that together with the prior sentence read that to mean that quantization is a form of compression. You quantize and then you may further compress, meaning you've already compressed. You already did a certain compression. And you're going to do it again. Now, had they, as our position is, had they truly paid attention to the specification, you would have noticed like on column five, starting around line 59 and carrying forward to column 10. Again, it expressly says that there is a compression followed by a separate quantization step. Again, throughout the intrinsic evidence, compression and quantization are used as two separate operations. There is no dispute or there was no evidence presented of anything from the prosecution's history impacting on this. So the four corners of the intrinsic evidence consistently says in the 204 patent, quantization is one process that is separate from compression. Now, the only way we can see that the board got to saying anything different is because it was led into using the asserted Huey patent as an interpretation aid. And one of our best indications there is on APPX60, which is the board's decision. The board said the specification of the 204 patent contains an express definition of quantization. There's no citation to anywhere in the record on that sentence. There's not even a citation back to its own analysis. The appellee provided no explanation. The only place we can find in the record where those type of statements are made are in appellee's brief and the statements of its expert, Dr. Roy. We've been talking at length about the claim construction issue. To what extent does the way we decide that issue impact the question of the patentability of the existing claims and the proposed amended claims? Does it take care of it or is there still more work to be done with respect to the Huey reference? I believe, Your Honor, it takes care of it. But conceivably, perhaps there would be some further remand necessary. But the reason we believe it takes care of it is this. The board basically said that quantization equals compression and then referred to Huey, or at least in certain instances, and referred to Huey. If Huey is the way you pronounce it? I want to make sure we're talking about the same thing. I use Huey. It may be more appropriately for those with the correct dialect to say Huey. Okay, that's fine. I just want to make sure we're talking about the same thing. We are talking about the same way. The 368 patent, I believe it is. But the board's decision, both on the original claims and the amended claims, hands down is claim construction. And we believe that if you correct the claim construction and you note that quantization is not compression in the 204 patent, there are different operations, then you look to Huey and you'll notice that there's no real compression of the type that's disclosed in 204 described anywhere in Huey. What Huey is describing, as we put it in our brief, is adaptive vector quantization. And specifically for Huey, what he's trying to do, assuming a he, what he's trying to do is to assign more bits to more significant channel taps, less bits to less significant, in order to improve the resolution. But in the passage that is cited in page 16 of Apelli's brief, it's a quote from Huey. It's around column five, line nine to 16, I believe, where Huey himself basically says what they're doing is quantizing individual coefficients. And remember, that's what I said. Quantization is typically done on individual pieces of data. And if this process is to be performed for the total number of available bits, there's no suggestion there that there's really any reduction of data at all, even assuming that that was the definition. But there's nothing that we saw in Huey that describes the type of compression, which is this calculated operation to take the set of data and be able to represent it with a smaller number of bits. And the data coefficients, you know, mathematical form, you have to have it converted to data, excuse me, to bits, in order to be operated on in the digital system. Ansel, you're into your rebuttal time. You may save it or use it. I'll reserve your honor. Thank you. Good morning, Your Honors. I'm Jonathan Dietrich for Seisel Communications. May it please the Court. The Board's analysis in its final written decision that both the original challenge claims of the 204 patent and the proposed substitute claims are anticipated and rendered obvious by the Huey reference is well-reasoned and supported by substantial evidence. The dispute between the parties centers on whether compression, specifically compressing estimated channel state information, excludes compression performed using a technique called quantization. So I'll start there. Like the 204 patent, Huy pertains to a multiple input, multiple output antenna communication system, and Huy recognizes that as the number of antenna pairs increase, the amount of channel state feedback information that needs to be transmitted increases drastically. And so to reduce the amount of that information that needs to be transmitted, Huy discloses compressing it before transmission using a technique called quantization. Here, UNM contends that this method of compressing the estimated CSI isn't within the scope of that term under the 204 patent. But that contention is flatly contradicted by the specification of the 204 patent, which provides an example in which quantizing portions of the estimated CSI is described as compressive. So let's turn our attention to that. That's a column four material. Exactly. But before I read that, I'd like to first explain that the 204 patent describes that a channel response includes channel tabs with each channel tab corresponding to a time delay and having a complex value that includes a magnitude and a phase. So the channel state information refers to information regarding those three values. The time delays it. The time delays the magnitudes and the phases of the channel tabs. And so with that context, we can understand the example provided in column four, which quantizes two of those values, the time delays and phases, and describes that as compressing the estimated CSI. So I'll briefly just read that portion, which states, beginning at line 11, the mobile station 104 may quantize information regarding time delays and phases of the selected channel tabs. The mobile station 104 may further compress the estimated CSI. And then it goes on. So if you're saying the word further means there's already been some compression. Exactly. If the word further wasn't there, then maybe there would be a little more difficult issue to decide. But with the word further there, as the board found, the disclosure that the mobile station 104 may further compress the estimated CSI must mean that the preceding action performed by the mobile station 104, which was quantizing information regarding the time delays and phases of the selected channel tabs, two of the components of the CSI, that that is an action that was regarded as compressive and therefore is an action that compresses at least a portion of the estimated CSI. So the board was correct to find that the intrinsic evidence did not support UNM's argument that compression achieved using quantization should be excluded from the scope of the compressing terms. If that sentence had been written so that the word further was moved to the front of the sentence followed by a comma and it said further the mobile station may compress the estimated CSI, that would take the helpful character of the word further out of the equation. It could mean also just, you know, where would you be if that sentence were rewritten that way? I realize it's a rewriting question. I agree that would change the meaning of that sentence. I don't think that it would change the result here. The plain and ordinary meaning of compression would still include quantization. And I was just about to get to the extrinsic evidence where UNM's expert Dr. Voydjic admitted that quantization results in a reduction of data bits, which is consistent with the plain and ordinary meaning of compressing, just as in the prior art reference, quantization is performed to reduce the number of data bits that need to be transmitted. That's compression under any ordinary meaning of the term, even if we didn't have that example in column four of the specification. I'd also like to address council's description that the board's decision was being aired by equating quantization and compression. That's not the case. That's an argument that UNM had made down below. And the final written decision, you know, took care to point out that it was not equating quantization with compression. Rather, quantization, you know, nor did the board say that quantization is equivalent or the only way to compress. Rather, the board found, quote, Compression is a broad and basic term that encompasses any form of compression, including quantization, so long as the quantization results in a reduction in data size. That's page 30 of the joint appendix. So with that, with the current construction in which the plain and ordinary meaning of compression does not exclude quantization, here I don't think there's any dispute that we anticipate both the original challenge claims as well as the proposed substitute claims. And so if this court were continuing to reject that argument, that compression achieved via quantization should be excluded from the scope of compression, I don't think there's any dispute that we disclosed that this is the compressing terms at issue and that the board's findings are supported by substantial evidence. I'm saying if we adopt the claim construction, then the board would resolve both the original claims, the three original claims, and the proposed amended claims that were rejected. That's right, Your Honor. I didn't see any special argument with respect to the proposed substitute claims apart from its claim construction argument. But I would furthest admit that all that's required is just to affirm that the plain and ordinary meaning of compression applies and that there's not a special carve-out to exclude quantization. But just going to the substantial evidence supporting anticipation, the only disputed limitation in the original claims was the compressing of the estimated CSI limitation. And so the board found that Wee's Mobile Station compresses the estimated CSI by adaptively quantizing channel type coefficients. And we see that in Wee at column 3, lines 54 through 57, which describes using vector quantization techniques to reduce the channel state feedback. And regarding the substitute claims, substantial evidence also supports the board's determination that Wee discloses the limitations of those. Can you just translate one thing for me? Is it reducing the channel state feedback? Yes. Why is that compression? So feedback means noise to me. I think it doesn't mean that in this document. So that's the explanation I'm looking for. Thank you, Yohair. Yes. So this goes back to, well, to answer your question directly first, feedback refers to the number of bids in the channel state information feedback signal that needs to be transmitted. And this goes back to what Wee recognized as the problem to be solved, which is the identical problem the 204 patent was trying to be solved, which is that in a MIMO system, as the number of pairs of antennas increase, channel state feedback information for each pair needs to be transmitted. So as those pairs increase, the required channel state information that needs to be sent back increases drastically. So Wee's objective was to reduce the number of data bids in that channel state information feedback signal. Okay. Turning back to the proposed substitute claims, the only limitation that UNM challenges was, or recites, that compressing further comprises generating a plurality of parameters to represent information regarding magnitudes of the select channel types and quantizing the plurality of parameters. And as the board determined, Wee discloses just that. Specifically, Wee discloses generating a plurality of complex-valued estimated channel type coefficients, which necessarily have a magnitude and a phase, and then quantizing those coefficients. And you see that in column 2, lines 5 and 6, columns 4, lines 31 and 38, and columns 6, lines 2 and 3 of Wee. You know, for example, in that last slide, columns 6, lines 2 through 3, Wee states, let A sub mk, capital R, meaning real, and A sub mk, capital I, meaning the imaginary part, denote the real and imaginary parts of the estimated channel types A, mk, respectively. And although those are real and imaginary, Dr. Roy explained that those representations of complex numbers is equivalent to a magnitude and phase representation through a simple mathematical transformation. Therefore, the plurality of those coefficients, as claimed, do represent information regarding the magnitude of the selected channel types. And then Wee discloses quantizing those coefficients. So the board's determination that Wee discloses that limitation is supported by substantial evidence. Do your honors have any other questions for me? No, I do not. Well, then, I'll cede the remainder of my time. Thank you. Thank you, counsel. Mr. Key. Yes, Your Honors. Just a few very quick points. A follow-up on my colleague's response to Judge Toronto's question about moving further to the beginning of the sentence. Mr. Dietrich said that that would change the meaning of the sentence. I'm not sure if that is true, but it would not change the meaning of the intrinsic evidence, which must be read as a whole. And read as a whole, again, looking at the claims and the claim construction, the dependent claims, et cetera, as we've gone through, it's clear that these are two separate operations. We submit that that's exactly what was meant by that sentence. And, in fact, it meant further processing after quantizing than by compressing, and that's consistent with Column 5, Lines 59 through Column 6, Line 4. I also, if I understood him correctly, I heard my colleague say that we should be considering extrinsic evidence. Well, first of all, no, we should not, because the intrinsic evidence is very clear here. There's no reason to go to extrinsic evidence. But I understood him correctly. He mentioned some purported admission by Dr. Vujicic, and then something about what the HUIE patent shows. That is exactly the problem. HUIE, even if you consider extrinsic evidence, is not the type of objective evidence that's to be considered as extrinsic evidence under Phillips. And also even the expert testimony is less critical. The most important intrinsic evidence here is some of the scientific papers that were presented that the board looked at and said they agreed, based on that evidence, that quantization is not compression. The argument that there was no special carve-out in the patent for saying compression is whatever without quantization, that's not required. When you follow Phillips, the whole idea is it will tell you what the boundaries and the limitations of the terms are. And as we walk through, Phillips here points out very clearly that, following Phillips' framework, that quantization and compression are two separate terms. And I'll point to one other thing I'll note. Again, this issue of the board's statement without citation, that the specification has an expressed definition of quantization, and remember I mentioned HUIE, there's no citation, what have you. But I will note that if you look at Appendix APP 1663 to 64, that's paragraph 59, where Dr. Roy says the following. Compression is accomplished by quantizing the parameters of the channel responses that represent the magnitudes, phases, and time delays of the channel taps, citing the exact same column 4, lines 11 through 19. It does not say that. It does not say you quantize it. If we were to quantize your time for argument, we would say it is over. All right. Very good, Your Honor. Thank you to both counsel. The case is submitted.